LAW OFFICES OF MARK YABLONOVICH
Mark Yablonovich, Esq., Cal. State Bar No. 186670
(E-Mail: mark@yablonovichlaw.com)
Neda Roshanina, Esq. Cal. State Bar No. 225337
(E-Mail: neda@yablonovichlaw.com)
Michael Coats, Esq., Cal. State Bar No. 258941
(E-Mail: michael@yablonovichlaw.com)
1875 Century Park East, Suite 700
Los Angeles, California 90067-2508
Telephone: (310) 286-0246 • Fax: (310) 407-5391

Attorneys for Plaintiff Zenia Chavarria

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ZENIA CHAVARRIA, individually, and on behalf of other members of the general public similarly situated,

Plaintiff,

vs.

RALPHS GROCERY COMPANY, an Ohio Corporation; and DOES 1 through 10, inclusive,

Defendants.

Case No.: 2:11-cv-02109-DDP (VBKx)

Assigned to: Hon. Dean D. Pregerson

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY THE ACTION**

Date: August 15, 2011
Time: 10:00 a.m.
Room: 3

Complaint Filed: March 11, 2011
Trial Date: Not Set
Disc. Cut-off: Not Set

LAW OFFICES OF MARK YABLONOVICH LOS ANGELES

## TABLE OF CONTENTS

I. INTRODUCTION ..... 3
II. SUMMARY OF FACTS ..... 4
III. ARGUMENT ..... 5
A. Defendant's Arbitration Policy is Unconscionable ..... 5
B. Procedural Unconscionability ..... 5
C. Substantive Unconscionability ..... 8
D. *Gentry* Remains Intact After *AT&T Mobility*, Which Does Not Apply Where To Do So Would Lead To The Waiver Of Substantive Statutory Rights ..... 11
E. A Prohibition On Class Actions Addressing Wages And Working Conditions Violates The NLRA ..... 13
IV. CONCLUSION ..... 15

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Am. Airlines v. Wolens*, 513 U.S. 219, 249 (1995) ................................ 6

*AT&T Mobility v. Concepcion,* __U.S.__ [131 S.Ct. 1740, 179 L. Ed. 2d 742] (2011) ................................ 11-13

*California v. United States*, 271 F.3d 1377 (Fed. Cir. 2001) ................ 14

*Kaiser Steel Corp. v. Mullins*, 455 U.S. 72 (1982) ........................ 14, 15

*Nagrampa v. MailCoups, Inc*., 469 F.3d 1257, 1280. (2006) ................ 6

*Net Global Mktg. v. Dialtone, Inc*. 217 Fed. Appx. 598, 601 (9th Cir. Cal. 2007) ................................ 8

*Sutherland v. Ernst & Young LLP*, 768 F. Supp. 2d 547 (2011) ................................ 12

## STATE CASES

*Armendariz v. Foundation Health Psychare Service, Inc.* 24 Cal.4th 83 (2000) ................................ 5,8

*Gentry v. Superior Court*, 42 Cal. 4th, 433 (2007) ........................ 11, 12

## FEDERAL STATUTES

9 U.S.C. § 2, Fed. Arbitration Act ................................ 11

29 U.S.C. § 7, National Labor Relations Act ........................ 3, 4, 13-15

29 U.S.C. §§ 151-169, National Labor Relations Act .................... 13, 14

## SECONDARY AUTHORITIES

*5200 St. Hotel Associates*, 321 NLRB 624 (1996) .............................. 14

*Harco Trucking, LLC adn Scott Wood*, 344 NLRB 478 (2005) ................................ 14

*In Re 127 Rest. Corp*., 331 NLRB 269 (2000) .................................... 14

*Trinity Trucking & Materials Corp*., 221 NLRB 364 (1975) ............... 13

*United States Parcel Service*, 252 NLRB 1015 (1980) ........................ 13

LAW OFFICES OF MARK YABLONOVICH LOS ANGELES

LAW OFFICES OF MARK YABLONOVICH LOS ANGELES

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The Motion to Compel Arbitration filed by Ralph's Grocery Company, Inc. ("Defendant") should be denied for several reasons. First, Defendant's arbitration policy is procedurally unconscionable in that the arbitration agreement, which is included within Defendant's Employment Application ("Application"), fails to provide applicants, such as Plaintiff, any negotiating power or meaningful choice. Furthermore, Defendant's Mediation & Binding Arbitration Policy ("Policy"), which is incorporated by reference into the Application and purports to bind applicants to the terms of the Policy, was not provided to Plaintiff until after she was hired.

The Policy is also substantively unconscionable in that its terms are one-sided, lacks any modicum of bilaterality, and contains a class action waiver that, if enforced, will frustrate Plaintiff's substantive rights.

The Policy also violates Section 7 of the National Labor Relations Act ("NLRA") which protects an employee's right to engage in "concerted activity" for "mutual aid or protection." Class actions, such as Plaintiff's are concerted activities under the NLRA.

Because (1) the arbitration clause and the Policy are both procedurally and substantively unconscionable, (2) the Policy's

prohibition of class actions frustrates Plaintiff's substantive rights, and (3) the NLRA protects the right to engage in concerted activity, Plaintiff therefore has the right to pursue this class action both for herself and for the mutual aid and protection of the class she seeks to represent.

## II. SUMMARY OF FACTS

Plaintiff worked for Defendant as a Service Deli Clerk at one of Defendant's Los Angeles grocery store locations. (Decl. of Ginger Vega in Sup. of Def.'s Mot. to Compel Arbitration ["Vega Decl."] ¶ 3). Plaintiff signed the Application on or about September 28, 2008. (Vega Decl. ¶ 4). By signing the Application, Defendant asserts that Plaintiff "understood and agreed" to arbitrate any potential claims arising out of her employment with Defendant in accordance with the Policy. (Def.'s Mot. to Compel Arbitration, Pg. 2, Line 15). Contrary to Defendant's assertion, Plaintiff could neither have understood nor agreed to the Policy because the employment application **did not** contain the Policy. The Application merely incorporates the terms of the Policy by reference into Defendant's Application:

> "...the Company has a Dispute Resolution Program that includes a Mediation & Binding Arbitration Policy…[that] is incorporated into this Employment Application by this reference as though it is set forth in full..."

(Vega Decl. ¶ 4, Ex. 1).

Defendant purportedly provided a copy of the arbitration agreement to Plaintiff **after** she was hired sometime in October 2008. (Vega Decl. ¶ 5).

## III. ARGUMENT

### A. Defendant's Arbitration Policy is Unconscionable

The arbitration clause buried within the fine print of Defendant's employment application is unconscionable. The California Supreme Court has held that unconscionability has both "procedural" and a "substantive" elements, the former focusing on "oppression" or "surprise" due to unequal bargaining power, the latter on "overly harsh" or "one-side" results. *Armendariz v. Foundation Health Psychcare Services, Inc*. 24 Cal.4th 83, 114 (2000). Procedural and substantive unconscionability must both be present, but need not be equal in degree for a court to refuse to enforce a contract or clause under the doctrine of unconscionability. *Id.* Courts us a sliding scale approach when evaluating an agreement's unconscionability: the more substantively oppressive the terms, the less evidence of procedural unconscionability is required to conclude that the terms are unenforceable, and vice versa. *Id.*

### B. Procedural Unconscionability

Procedural Unconscionability "is broadly conceived to encompass not only the employment of sharp practices and the use of fine print and

convoluted language, but a lack of understanding and an inequality of bargaining power." *Am. Airlines v. Wolens*, 513 U.S. 219, 249 (1995). It is also found in where there exists an "inequality of bargaining power that results in no real negotiation and an absence of meaningful choice…" *Nagrampa v. MailCoups, Inc*., 469 F.3d 1257, 1280. (2006). (*See*, *Am. Airlines v. Wolens*, 513 U.S. at 249. holding that "a determination that a contract is "unconscionable" may in fact be a determination that one party did not intend to agree to the terms of the contract.")

Here, Plaintiff filled-out and submitted Defendant's Application because she needed a job. (Coats Decl. ¶ 2). Plaintiff was required to sign the Application in order to obtain an interview and possible employment with Defendant. At the time Plaintiff submitted the Application, she was not provided a copy the Policy referred to in the Application's arbitration clause. (Vega Decl. ¶ 5). Even if Plaintiff had been aware that the Application contained an arbitration clause, she would not have understood the legal significance of the clause or been in a position to negotiate the terms of Defendant's "take it or leave it" Application and Policy. (Coats Decl. ¶ 2).

Although Plaintiff now understands that at the new-hire orientation held on or about October 14, 2008, she initialed a form which

LAW OFFICES OF MARK YABLONOVICH LOS ANGELES

LAW OFFICES OF
MARK YABLONOVICH
LOS ANGELES

indicates that she received a copy of Defendant's Policy, she does not recall receiving the Policy. (Coats Decl. ¶ 2). Even if Plaintiff had received the Policy, she did not understand that the Policy waived her right to resolve any potential employment-related dispute in a court of law before a jury of her peers. (Coats Decl. ¶ 2). Moreover, even if Plaintiff knew that such a policy existed, and understood the implications of the Policy, she would not have been in a position to negotiate the terms of Defendant's "take it or leave it" Policy. (Coats Decl. ¶ 2).

From the time Plaintiff completed Defendant's Application through the entire period of her employment, she only understood that her potential and continued employment with Defendants required that she sign the paperwork Defendant presented to her and that her refusal to sign any such paperwork would jeopardize her ability to obtain or retain employment with Defendant.

After being hired, Plaintiff attended a new-hire orientation at which Defendants required Plaintiff to initial a form entitled "Acknowledgement of Receipt" which purports to indicate that Plaintiff received a copy of twenty-two (22) different handouts, including handouts regarding Customer Service, On-the-Job Injuries, Unlawful Harassment & Discrimination, Rules and Regulations, Dress and Appearance, Retail Management Program, Shopping Experience

LAW OFFICES OF MARK YABLONOVICH LOS ANGELES

Program, Slicer Safety Training, Recordation of Sales, Mesh Glove Policy, Sanitation Policy, Food Safety, Member Guide, the S.T.A.R. Safety Program, and the Policy.

(Coats Decl. ¶ 3, Ex. "A").

Defendants failed to provide Plaintiff with a genuine opportunity to understand that the form she was told to initial waived her right to have any potential employment dispute resolved in a court of law before a jury of her peers. Plaintiff understood only that her continued employment with Defendant required that she sign the Acknowledgment of Receipt in order to maintain the position to which she had just been hired. Because Plaintiff was compelled to sign the Application and Acknowledgement of Receipt as a requirement for potential and continued employment, and because Plaintiff neither knew nor understood that the Policy waived her rights to resolve any potential employment dispute in a court of law, the arbitration cause is procedurally unconscionable and should not be enforced.

**C. Substantive Unconscionability**

Substantive unconscionability focuses "on overly harsh or one-sided results." *Armendariz*, 24 Cal.4th at 114. In the context of arbitration agreements, at least a "modicum of bilaterality" is required."

*Net Global Mktg. v. Dialtone, Inc*. 217 Fed. Appx. 598, 601 (9th Cir. Cal. 2007).

Here, Defendant's purportedly bound Plaintiff to an arbitration policy that was not provided to her until after she was hired and present at a new-hire orientation meeting. (Vega Decl. ¶ 5). Plaintiff did not ask to sign an arbitration agreement, did not negotiate its terms, and signed only as a condition of obtaining and maintaining employment. (Coats Decl. ¶ 2). There was therefore no "modicum of bilaterality" in the creation of the purported arbitration agreement.

Moreover, the provisions of the Policy are clearly one-sided. For example, the Policy's provision for selection of an arbitrator ensures that Defendant will have the ultimate choice in selecting the arbitrator.

First, the Policy prohibits both the American Arbitration Association ("AAA") and the Judicial Arbitration & Mediation Services ("JAMS") from administering the arbitration. (Vega Decl. ¶ 4, Ex. 2). Having thus limited the choice of arbitrators by eliminating two organization that Defendant does not want to have arbitrate its employment disputes, the Policy provides for a selection process that is designed ensure that Defendant ultimately gets an arbitrator of its choosing.

LAW OFFICES OF MARK YABLONOVICH LOS ANGELES

LAW OFFICES OF
MARK YABLONOVICH
LOS ANGELES

Specifically, the Policy provides that, after each party has selected three proposed arbitrators "[t]he parties will alternate in striking one name from any of the other party's list … until there is only one proposed Qualified Arbitrator that has not been stricken." (Vega Decl. ¶ 4, Ex. 2). The Policy provides that the first strike is made by the party that did not demand arbitration. (Vega Decl. ¶ 4, Ex. 2). Therefore, any employee who seeks to arbitrate an employment dispute with Defendant will necessarily be compelled to arbitrate under Defendant's chosen arbitrator, as one of Defendant's three selections will ultimately be the arbitrator under the Policy's selection process. Because each of the employee's proposed arbitrators will necessarily be stricken by Defendant under the terms of the Policy, the right of an employee to select three proposed arbitrators appears to be a mere ruse to give the appearance of choice in the selection process.

Furthermore, the Policy is one-sided, and reinforces Defendant's position of power by substantively disadvantaging Plaintiff. Among other things, the Policy prevents Plaintiff from recovering attorneys' fees that she may have otherwise been entitled to recover in a court of law. (Vega Decl. ¶ 4, Ex. 2). Burying such one-sided provisions within a policy that Plaintiff was not provided until after she was hired – and even then was not given sufficient time to understand or given the opportunity

LAW OFFICES OF MARK YABLONOVICH LOS ANGELES

to opt-out – is unconscionable. Because the Policy is unconscionable, it should not be enforced.

**D. *Gentry* Remains Intact After *AT&T Mobility*, Which Does Not Apply Where To Do So Would Lead To The Waiver Of Substantive Statutory Rights**

The *Gentry* test[1] derives from earlier federal cases which established the federal common law doctrine that requires arbitration agreements to safeguard the vindication of statutory rights. *Id. Gentry's* holding was an application of that federal doctrine, stating that certain statutory rights are unwaivable and, thus, class action waivers are unenforceable "when class actions would be the most effective practical means of vindicating those rights." *Id*. at 465.

*Gentry* remains intact after *AT&T Mobility*, which does not apply where to do so would lead to the waiver of substantive statutory rights. *AT&T Mobility* overruled *Discover Bank* and held that the FAA, 9 U.S.C. § 2, preempted California's categorical rule invalidating class

---

[1] The *Gentry* test requires that "the trial court [] consider ... the modest size of the potential individual recovery, the potential for retaliation against members of the class, the fact that absent members of the class may be ill informed about their rights, and other real world obstacles to the vindication of class members' rights to overtime pay through individual arbitration." *Gentry v. Superior Court*, 42 Cal. 4th, 433, 463 (2007).

action waivers in consumer adhesion contracts. *AT&T Mobility v. Concepcion*, 131, S. Ct. 1740, 1753 (2011). However, the Supreme Court held only that a state court may not require class arbitration, as long as the defendant's arbitration procedures "virtually guarantee" to make the claimants whole. *Id*. *See*, *Sutherland v. Ernst & Young LLP*, 768 F. Supp. 2d 547, *19 (2011) (refusing to enforce a class action waiver that would have the practical effect of immunizing the defendant from federal labor laws because no single plaintiff would have sufficient incentive to pursue a claim).

*AT&T Mobility* assumed that Concepcion's rights would be safeguarded, relying on AT&T's generous arbitration agreement, which provided for double attorneys' fees and a $7500 premium if the arbitrator awarded more than AT&T's last offer. *See id*. Indeed, the Court assumed that under the AT&T agreement, a consumer would be better off in arbitration than litigation. *Id*. at 1744-45. *AT&T Mobility* is therefore limited to its facts, where upholding a class waiver would not frustrate substantive rights.

Here, Plaintiff would not be better off in arbitration than litigation. Because Plaintiff's potential individual recovery is modest, it is highly unlikely that Plaintiff would be able to find counsel willing to take her case, given the small monetary value of the claims alleged.

Plaintiff's counsel – a firm specializing in wage and hour litigation – could not afford to individually represent Plaintiff, given the modest damages involved with her claims of, at most, a few thousand dollars. (Coats Decl. ¶ 4).

Moreover, absent class members may be ill-informed about their rights or fear retaliation if they assert their rights. Therefore, because the Policy does not "virtually guarantee" to make Plaintiff and the class whole, Defendant's motion should be denied.

**E. A Prohibition On Class Actions Addressing Wages And Working Conditions Violates The NLRA**

Section 7 of the NLRA, 29 U.S.C. §§ 151-169, protects the right of employees to act collectively for their "mutual aid or protection." Pursuant to Section 7, employers may not "interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157…." 29 U.S.C. § 158(a)(1). Class actions that seek to improve wage or working conditions have been held to qualify as "concerted activities" within the meaning of section 7. *Trinity Trucking & Materials Corp*., 221 NLRB 364, 365 (1975); see also *United States Parcel Service*, 252 NLRB 1015 (1980). Thus, a prohibition on class actions addressing wages violates the NLRA. 29 U.S.C. §§ 151-169.

LAW OFFICES OF MARK YABLONOVICH LOS ANGELES

Section 7 encompasses civil lawsuits and, in fact, "[i]t is well settled that the filing of a civil action by employees is protected activity unless done with malice or in bad faith." *In Re 127 Rest. Corp*., 331 NLRB 269, 275 (2000). A class action is treated identically by Section 7 as an FLSA collective action. *Harco Trucking, LLC and Scott Wood*, 344 NLRB 478, 479 (2005) (holding that it was unlawful to refuse to hire an individual based on that individual's participation in a class action lawsuit because filing and maintaining a class action lawsuit is protected concerted activity).

Because class actions constitute concerted activity protected by the NRLA, an arbitration agreement barring employees from access to a class action procedure to obtain redress for violations of employment laws necessarily violates the NLRA because it inhibits protected concerted activity. *5200 St. Hotel Associates*, 321 NLRB 624, 633 (1996) ("The Board and the courts have long held that conduct of employees to vindicate rights to payment for overtime work, and availing themselves of the safeguards of the Fair Labors Standards Act, is protected, concerted activity under Section 7 of the Act.").

Unlawful contracts that violate federal law are void and cannot be enforced. *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 77-78 (1982); see also *California v. United States*, 271 F.3d 1377, 1383 (Fed. Cir. 2001)

("Without a doubt, contractual provisions made in contravention of a statute are void and unenforceable").

Here, the Policy bars Plaintiff from pursuing a class action, either in court or in arbitration. (Vega Decl. ¶ 4, Ex. 1). The ability to pursue violations of the Labor Code on a collective basis is protected activity by the NLRA, section 7. Accordingly, the Policy interferes with "concerted activity," violates federal law, and cannot be enforced. *Kaiser Steel Corp. v. Mullins*, 455 U.S. at 77-78 (1982) (holding that contract clauses violating the NLRA cannot be enforced because courts do not enforce illegal contracts). Thus, Defendant's class action waiver cannot be enforced because it violates federal law.

## IV. CONCLUSION

Based on the foregoing, Defendant's Motion to Compel Arbitration/Dismiss or Stay the Action should be denied.

Dated: July 25, 2011

LAW OFFICES OF MARK YABLONOVICH

By: /s/ Michael Coats
Mark Yablonovich, Esq.
Neda Roshanian, Esq.
Michael Coats, Esq.

Attorneys for Plaintiff Zenia Chavarria, and all others similarly situated