1

2

3                                                                    **O**

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| ZENIA CHAVARRIA, individually, and on behalf of other members of the general public similarly situated, | Case No. CV 11-02109 DDP (VBKx) |
| | **ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION ON AN INDIVIDUAL BASIS; AND TO DISMISS OR STAY ACTION** |
|                  Plaintiff, | [Motion filed on July 11, 2011] |
|    v. | |
| RALPHS GROCER COMPANY, an Ohio corporation, | |
|                Defendants. | |

In March 2011, Zenia Chavarria ("Plaintiff") brought suit individually and on behalf of others similarly situated against her employer, Ralphs Grocery Company ("Ralphs"). Plaintiff alleges various wage and hour violations of California law and seeks compensation for unpaid wages. (Compl. ¶¶ 30-88.) Ralphs now brings a Motion to Compel Arbitration on an Individual Basis and to Dismiss or Stay Action under the Federal Arbitration Act ("FAA"). (Dkt. No. 6.)

Having read the parties' papers, considered the arguments therein, and heard oral argument, the court concludes that the

1  arbitration agreement Ralphs seeks to enforce is procedurally and

2  substantively unconscionable, and DENIES Ralphs' motion.

3  **I. Background**

4       On September 22, 2008, Plaintiff applied for a job at Ralphs.

5  To that end, she completed and signed Ralphs' employment

6  application (the "Employment Application" or "Application").

7  (Def.'s Motion, Ex. 1, Employment Application.)

8       The Employment Application includes a paragraph stating that

9  Ralphs has a Dispute Resolution Program.  The Application states

10 that the prospective employee agrees that the "Dispute Resolution

11 Program [] includes a Mediation & Binding Arbitration Policy (the

12 'Policy')," which is "incorporated into this Employment Application

13 by this reference as though it is set forth in full . . . ."

14 (Def.'s Motion, Ex. 1, Employment Application.)  The Employment

15 Application concludes with language stating that the applicant has

16 either "received a copy of the Policy or one has been made

17 available to [her] through the Company's Director of Personnel &

18 Benefits, 1100 West Artesia Boulevard, Compton, CA 90220 . . . ."

19      At some point after September 22, 2008, Plaintiff was

20 interviewed and hired by Ralphs.[1]  On October 14, 2008, at a new

21 employee orientation attended by Plaintiff, Plaintiff wrote her

22 initials on a form, which acknowledged receipt of twenty-two

23 different forms and manuals.  (Decl. Cotes, Ex. A.)  Included in

24 that list was an acknowledgment of receipt of the full terms of the

25 "Mediation & Binding Arbitration Policy" (i.e the "Arbitration

26 Policy" or the "Policy").

27

28      [1]  Neither Ralphs nor Plaintiff provided the court an exact
    date of hire.

1        The Policy is four single-spaced pages long and provides,

2   inter alia:

3            **Policy Preamble, 1., 2., & 4.  <u>All</u> employment and
                 pre-employment disputes including civil rights
4                claims, harassment claims, and wage and hour
                 claims will be arbitrated**[2]

5

6            [T]his   Arbitration   Policy   is   the
             exclusive mechanism for formal resolution of
             disputes and awards of relief that otherwise
7            would be available to Employees or the Company
             in  a  court  of  law  or  equity  or  in  an
8            administrative agency.
             . . .
9            Covered Disputes are employment-related
             disputes  .  .  .  which  involve  the
10           interpretation  or  application  of  this
             Arbitration  Policy,  the  employer/employee
11           relationship, an Employee's actual or alleged
             employment with Ralphs . . ., the termination
12           of such employment, or applying for or seeking
             such employment.
13           . . .
             Covered Disputes include, for example and
14           without limitation, disputes having anything
             to do with the interpretation or application
15           of  this  Arbitration  Policy  .  .  .,  and
             disputes, claims or causes of action for
16           unfair competition, unfair business practices
             . . . fraud, breach of contract, injunctive
17           relief,  unlawful  harassment,  unlawful
             discrimination, unlawful retaliation, failure
18           to provide reasonable accomodation(s), unpaid
             wages or failure to pay overtime or other
19           compensation (or the computation therof),
             failure to provide family or medical (or other
20           required) leave, failure to consider for
             hiring, failure to hire for employment and
21           actual  or  constructive  termination  of  the
             employment relationship.  Covered Disputes . .
22           . [also] include all Employee's individual
             statutory claims or disputes under federal,
23           state and local laws including, for example
             and without limitation, any claims or disputes
24           arising under the California Fair Employment
             and Housing Act; . . . the Civil Rights Act of
25           1964; the Americans With Disabilities Act; the

26           _____

27           [2] The court uses the Policy's numbering for ease of reference.
     The headings are the court's own.  The excerpts below the headings
28   are from Ralphs' Arbitration Policy.  (<u>See</u> Def.'s Motion, Ex. 2,
     Mediation & Binding Arbitration Policy.)

                                    3

Age Discrimination in Employment Act; the Family Medical Leave Act; the California Family Rights Act; the California Labor Code . . .; the Fair Labor Standards Act; the Employee Retirement Income Security Act; . . . and the United States Code, as enacted and amended.

**3.   Jury trial waiver**

    <u>There are no judge or jury trials permitted under this Arbitration Policy.</u>  The Company [i.e. Ralphs] and Employees waive any right that they have or may have to a judge or jury trial of any Covered Disputes . . . .

**7.   The arbitrator <u>must</u> be a retired federal or state judge, and the arbitrator may not be an organization such as JAMS or AAA**

    [T]he 'Qualified Arbitrator' must be a retired state or federal judge . . . from the state jurisdiction or federal jurisdiction in which the Covered Dispute(s) arose or will be arbitrated.
    . . .
    [N]either the American Arbitration Association ("AAA") nor the Judicial Arbitration & Mediation Service ("JAMS") will be permitted to administer any arbitration held under or pursuant to this Arbitration Policy.

**7.     Selection of an arbitrator: Ralphs will always select the arbitrator for any employee-initiated dispute, absent mutual agreement to the contrary**

    If the parties do not mutually agree on the selection and appointment of a Qualified Arbitrator, the following selection method will be used to select and appoint a Qualified Arbitrator: (1) Each party to the arbitration proceeding will propose a list of three Qualified Arbitrators that they want appointed to hear and decide the Covered Dispute(s); and (2) The parties will alternate in striking one name from any other party's list of proposed Qualified Arbitrators, with the first strike to be made by a party who has not demanded arbitration pursuant to this Arbitration Policy, followed by a continuing rotation of alternating adverse parties until there is only one proposed Qualified Arbitrator that has not been stricken, who will be deemed to be the parties' selected and appointed

4

Qualified Arbitrator to hear and decide the
Covered Dispute(s) that are the subject of the
arbitration proceedings.

**8.  Discovery**

[T]he parties will have the right to
conduct normal discovery and to bring motions,
as provided by the [Federal Rules of Civil
Procedure].
. . .

**8.  Class action waiver**

[T]here is no right or authority for any
Covered Disputes to be heard or arbitrated on
a class action basis, as a private attorney
general, or on bases involving claims or
disputes brought in a representative capacity
on behalf of the general public
. . .

**9.  The Policy trumps any longer statutory statute
of limitations**

In the event that the applicable statute
of limitations period as provided under
governing law is longer than one year
. . . [Ralphs] and Employees agree that the
applicable state of limitations period is
shortened to one year.

**10.  Each party must bear their own attorney's
fees.[3]  The Arbitrator's fees and any
arbitration fees must be allocated and paid
"up front" before evidence is received.  Any
fee dispute is resolved by the Arbitrator, but
the Arbitrator is stripped of any authority to
allocate fees other than 50/50 absent
"settled" authority coming _only_ from the
Supreme Court.  The decisions of all inferior
courts are to be disregarded.**

Each party to the arbitration will pay the
fees for his or its own attorneys, subject to
the remedies to which that party may later be
entitled under applicable law.  Ralphs . . .

---

[3]  This clause contains a provision stating that it is subject
to "any remedies to which that party may later be entitled under
applicable law."  It is unclear what is meant by "later" because
the Arbitrator is not granted authority to address issues involving
whether attorney's fees must be paid to the prevailing party and,
if so, in what amount.  "Later" may mean in a court of law.

1          in all cases where required by settled and
        controlling legal authority will pay up to all
2          of the Qualified Arbitrator's and arbitration
        fees, as apportioned by the Qualified
3          Arbitrator at the outset of the arbitration
        proceeding . . . .  In all instances in which
4          there is a dispute over the apportionment of
        the . . . arbitration fees, such dispute is a
5          Covered Dispute under this Arbitration Policy
        which must be resolved by the Qualified
6          Arbitrator, who must apply and follow only
        decisions of the United States Supreme Court
7          in resolving such dispute . . . .  In the
        event settled and controlling [Supreme Court]
8          legal authority does not require that one
        party or another bear a greater share of the
9          Qualified Arbitrator's or arbitration fees,
        such fees will be apportioned equally between
10         each set of adverse parties.

11 (Def.'s Motion, Ex. 2, Mediation & Binding Arbitration Policy.)

12     From October 2008 to March 2009, Plaintiff worked for Ralphs

13 in Los Angeles as a Service Deli Clerk.  (Compl. ¶ 17.)

14 Plaintiff's regular duties included preparing and roasting

15 rotisserie chicken, preparing sandwiches, maintaining food safety

16 standards, and keeping the service deli area clean.  (Id.)

17     In March 2011, Plaintiff brought suit against Ralphs for

18 failure to pay Plaintiff overtime compensation, failure to pay

19 Plaintiff for meal and rest periods during which she worked, and

20 failure to provide complete and accurate wage statements in

21 violation of the California Labor Code.  (Id. ¶¶ 21-22.)

22 Plaintiff seeks relief on behalf of herself and others similarly

23 situated, and she argues that the Arbitration Policy is

24 unenforceable as unconscionable and that the Policy's class action

25 waiver violates the National Labor Relations Act and California

26 law.  Ralphs moves this court to compel individual arbitration.

27 (Def.'s Motion 2:9-21.)

28

## II.  Legal Standard

Under the FAA, 9 U.S.C. § 1 et seq., a written agreement that controversies between the parties shall be settled by arbitration is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  A party aggrieved by the refusal of another to arbitrate under a written arbitration agreement may petition the court for an order directing that arbitration proceed as provided for in the agreement.  9 U.S.C. § 4; see e.g. Stirlen v. Supercuts, Inc., 51 Cal. App. 4th 1519, 1526-27 (1997) (considering a motion to compel arbitration).  In considering a motion to compel arbitration, the court must determine whether there is a duty to arbitrate the controversy, and "this determination necessarily requires the court to examine and, to a limited extent, construe the underlying agreement." Stirlen, 51 Cal. App. 4th at 1527.  The determination of the validity of an arbitration clause, which may be made only "upon such grounds as exist for the revocation of any contract," is solely a judicial function.  Id. (internal citation omitted).

If the court is satisfied that the making of the arbitration agreement or the failure to comply with the agreement is not at issue, the court shall order the parties to proceed to arbitration in accordance with the terms of the agreement.  9 U.S.C. § 3.  The FAA reflects a "federal policy favoring arbitration agreements." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 25 (1991) (quoting Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)).

**III. Discussion**

Plaintiff signed Ralphs' Employment Application on September 22, 2008. (Vega Decl. ¶ 4.)  That Application contained a requirement to resolve disputes through Ralphs' Dispute Resolution Program, which includes an Arbitration Policy.   Ralphs now moves this court to compel Plaintiff to arbitrate her wage and hour violation claims on an individual basis.   Plaintiff argues that Ralphs' Arbitration Policy is procedurally and substantively unconscionable and, therefore, unenforceable.   The court agrees.

Unconscionability has generally been recognized to include (1) an absence of meaningful choice on the part of one of the parties and (2) contract terms which are unreasonably favorable to the other party.  <u>Stirlen</u>, 51 Cal. App. 4th at 1531.   Put another way, unconscionability has a "procedural" and "substantive" element.  <u>See</u> <u>Davis v. O'Melveny & Myers</u>, 485 F.3d 1066, 1072 (9th Cir. 2007).

California courts apply a "sliding scale" analysis in making this determination: "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa."  <u>Id.</u> (quoting <u>Armendariz v. Found. Health Psychcare Servs., Inc.</u>, 6 P.3d 669, 690 (Cal. App. 2000)). Both procedural and substantive unconscionability must be present for a contract to be declared unenforceable, but they need not be present to the same degree.  <u>Harper v. Ultimo</u>, 113 Cal. App. 4th 1402, 1406 (2003).

**A. Procedural Uncionscionability**

1    Procedural unconscionability focuses on the factors of
2  surprise and oppression, "with surprise being a function of the
3  disappointed reasonable expectations of the weaker party."
4  Harper, 113 Cal. App. 4th at 1406.
5    Here, Plaintiff was required — in order to complete the
6  Employment Application and apply for a job at Ralphs — to agree to
7  the terms of Ralphs' Arbitration Policy.  The Employment
8  Application states at its top that by signing the Application, the
9  Applicant acknowledges that she has "read, understood, and
10  agree[d]" that the Arbitration Policy is incorporated into the
11  Application.  The Application further states in small type that
12  the prospective employee has "received a copy of the Policy **or** one
13  has been made available" to the employee at the Company's Director
14  of Personnel and Benefits, located at a physical address in
15  Compton, California. (Def.'s Motion, Ex. 1, Employment Application
16  (emphasis added).)
17    The actual terms of the Arbitration Policy were first
18  provided to Plaintiff at a new employee orientation more than
19  three weeks after she signed the Employment Application — i.e.,
20  after she was hired and after she had agreed to arbitrate all
21  future disputes with Ralphs.
22    Ralphs' position in structuring the Application as it did
23  appears to be that a prospective employee can be compelled to
24  arbitrate pre-employment hiring disputes,[4] and that making the
25
26  _____
        [4]  Although not raised here, the court questions whether, in
27  circumstances such as those here, an Applicant has received
    consideration in exchange for waiving all potential claims,
28  including those involving discrimination, arising from the hiring
    process.

1  terms of the Arbitration Policy "available" at some other location

2  is the equivalent of physically handing an applicant the terms.

3  The court disagrees.

4      Here, the Policy was not provided to Plaintiff until after

5  she had already agreed to be bound by it.  For this reason, the

6  court finds that Plaintiff was reasonably "surprised" by the terms

7  and conditions of Ralphs's Arbitration Policy.  See <u>Pokorny v.</u>

8  <u>Quixtar, Inc.</u>, 601 F.3d 987, 996-97 (9th Cir. 2010) (holding that

9  arbitration agreements were unconscionable where, among other

10  factors, the full terms of those agreements were not attached to

11  the agreement).

12      Further, the Policy was presented to the Plaintiff on a take

13  it or leave it basis.

14          An agreement or any portion thereof is
            procedurally unconscionable if 'the weaker
15          party is presented the clause and told to take
            it or leave it without the opportunity for
16          meaningful negotiation.'  Thus, we have said
            that a contract is procedurally unconscionable
17          under California law if it is 'a standardized
            contract drafted by the party of superior
18          bargaining strength, that relegates to the
            subscribing party only the opportunity to
19          adhere to the contract or reject it.'

20  <u>Id.</u> at 996 (internal citations omitted).

21      Ralphs required Plaintiff to accept the "available"

22  Arbitration Policy not only as a condition of employment, but as a

23  condition of Plaintiff's <u>application</u> for employment.  Plaintiff

24  could not even present herself for consideration without first

25  acceding to the terms of the Policy.  There is, therefore, no

26  question that Ralphs is the party of superior bargaining power, or

27  as described in <u>Pokorny</u>, the "stronger" party.  <u>Id.</u> (explaining

28  that in assessing procedural unconscionability, the court must

1   consider "whether the contract was one drafted by the stronger

2   party and whether the weaker party had an opportunity to

3   negotiate").   Indeed, describing Ralphs' bargaining power here as

4   simply "stronger" than or "superior" to Plaintiff's belies the

5   total imbalance between the parties' relative positions.   Ralphs

6   does not have merely superior or stronger bargaining power, it has

7   <u>all</u> of the bargaining power.

8         Accordingly, because the Policy was presented as "take it or

9   leave it," the Policy is procedurally unconscionable.[5]

10  Additionally, because the Plaintiff was not given the opportunity

11  to review the full Policy before she was hired, this additional

12  defect acts to "multiply" the degree of procedural

13  unconscionability.[6]  <u>See Id</u>. at 997 (explaining that the

14  defendant's failures, including failure to supply the plaintiff

15  with the full terms of the binding arbitration process, "multiply

16  the degree of procedural unconscionability of the ADR agreements").

17        **B. Substantive Uncionscionability**

18        Substantive unconscionability focuses on the one-sidedness of

19  the contract terms.  <u>Armendariz</u>, 6 P. 3d at 690.  "Where an

20  arbitration agreement is concerned, the agreement is unconscionable

21  unless the arbitration remedy contains a 'modicum of

22  bilaterality.'"  <u>Ting</u>, 319 F.3d at 1149 (citing <u>Armendariz</u>, 6 P.3d

23  _____

24        [5] The fact that the Policy is characterized by Ralphs as its
    "policy" is also notable.  An "agreement" carries with it at least
25  the theoretical opportunity to negotiate.  A "policy," in contrast,
    suggests a firm set of established procedures and, implicit
26  therein, a reduced openness to negotiation.

27        [6] As discussed above, the fact that the Policy was
    theoretically "available" at some other physical location is not an
28  adequate substitute for disclosure of the actual terms of the
    Policy.

1  at 692).   Put another way, the doctrine of substantive

2  unconscionability limits "the extent to which a stronger party may

3  . . . impose the arbitration forum on the weaker party without

4  accepting that forum for itself." <u>Id.</u>   The court finds the Policy

5  is substantively unconscionable for the reasons below.

6       First, the court finds the method devised by Ralphs to select

7  a "qualified arbitrator" to be a sham. (<u>See</u> Def.'s Motion, Ex. 2,

8  Mediation & Binding Arbitration Policy ¶ 7.)   If the parties do not

9  mutually agree on an arbitrator, an arbitrator will be selected

10 according to the following procedure: (1) Each party will propose

11 three arbitrators; (2) the parties will alternate in striking one

12 name from a the other party's list of proposed arbitrators until

13 one arbitrator is remaining; and (3) the first strike will be made

14 by the party who has not demanded arbitration pursuant to the

15 Arbitration Policy. (<u>Id.</u>)

16       In <u>every</u> instance in which an employee seeks arbitration, the

17 employee will strike second and, therefore, will strike two of

18 Defendant's proposed arbitrators in the time that Defendant strikes

19 all three of the employee's arbitrators.[7]   The end result is that

20 the "last arbitrator standing" will <u>always</u> be one of the three

21 proposed by Ralphs.

22

23

24       [7] Suppose, for example, that Ralphs lists Arbitrators A, B,
   and C, and an employee lists Arbitrators 1, 2, and 3.  Ralphs
25 strikes first, and eliminates Arbitrator 1.  The employee goes
   next, striking Arbitrator A.  Ralphs then proceeds to strike
26 Arbitrator 2.  The employee then eliminates Arbitrator B from
   consideration.  Ralphs then strikes Arbitrator 3.  At that point,
27 Arbitrator C, chosen by Ralphs, is the last arbitrator standing,
   and is therefore selected.  The employee does not have the
28 opportunity to exercise his third strike.

1    Defendant argues that this provision is not one-sided because
2  "one party or the other must strike first" and "either party is
3  free to demand arbitration and thereby secure the right to strike
4  second." (Def.'s Reply 16:21-24.)  As illustrated above, the
5  "right" to "strike second" is not much of a "right" at all.
6  Furthermore, the court is not persuaded that Ralphs is equally
7  likely as one of its employees to request arbitration.  Ralphs is
8  the employer of at will employees.  The Policy governs claims that
9  are overwhelmingly likely to be raised by an employee — not by an
10 employer.  Ralphs is unlikely to bring a claim against its employee
11 for, for example, unfair competition, unfair business practices,
12 unlawful harassment, unlawful discrimination, unlawful retaliation,
13 unpaid wages or failure to pay overtime or other compensation,
14 failure to consider for hiring, failure to hire, violation of the
15 California Fair Employment and Housing Act, violation of the Civil
16 Rights Act of 1964, or violation of the American with Disabilities
17 Act, all of which must be arbitrated under the terms of the Policy.
18 (See Def.'s Motion, Ex. 2, Mediation & Binding Arbitration Policy ¶
19 4.)

20    The Policy's provisions regarding the eligibility of potential
21 arbitrators also raise fundamental unconscionability concerns.
22 Under the terms of the Policy, paragraph 7, "the 'Qualified
23 Arbitrator' must be a retired state or federal judge," . . . "and
24 neither the American Arbitration Association ("AAA") nor the
25 Judicial Arbitration & Mediation Services ("JAMS") will be
26 permitted to administer any arbitration held under or pursuant to
27 this Arbitration Policy."  (Def.'s Motion, Ex. 2, Mediation &
28 Binding Arbitration Policy ¶ 7.)  By eliminating the ability of an

1  institutional arbitrator to serve, Ralphs eliminates any

2  uncertainty concerning the selection of the ultimate arbitrator.

3  The AAA, for example, has its own process for selecting a neutral

4  arbitrator when the parties disagree.[8]  Further, institutional

5  arbitrators are less likely to be influenced by a well-paying

6  repeat party, such as Ralphs, than are hand-picked individual

7  arbitrators who stand to benefit from Ralphs' frequent patronage.

8  In short, the Policy's restrictions mandating private, individual

9  arbitrators outside the AAA and JAMS organizational framework,

10  coupled with the arbitration selection "process," ensure that the

11  arbitrator will be a person selected by Ralphs.

12      These consequences are compounded by the fact that under

13  paragraph 10 of Ralphs' Arbitration Policy, the arbitrator

14  apportions the arbitration and arbitrator's fees between the

15  parties at the outset of the arbitration proceedings and before the

16  introduction of evidence, regardless of the merits of the claim.

17  The default allocation is a fifty-fifty fee split.  In the event of

18

19      [8]  The court takes judicial notice of AAA's Employment
20  Arbitration Rules and Mediation Procedures.  If the parties to a
    AAA arbitration are unable to agree upon an arbitrator, AAA
21  provides:
            [E]ach party to the dispute shall have 15 days
22          from the transmittal date in which to strike
            names objected to, number the remaining names
23          in order of preference, and return the list to
            the AAA. . . .  From among the persons who
24          have been approved on both lists . . . the AAA
            shall invite the acceptance of an arbitrator
25          to serve.  If the parties fail to agree on any
            of the persons named, or if acceptable
26          arbitrators are unable to act, or if for any
            reasons the appointment cannot be made from
27          the submitted list, the AAA shall have the
            power to make the appointment from among other
28          members of the panel without the submission of
            additional lists."

1  a dispute regarding the apportionment of fees (which is almost
2  universally the case), the arbitrator is empowered to resolve the
3  dispute only if there is settled and controlling United States
4  Supreme Court authority requiring a particular resolution.
5  Authority from any other court, no matter how relevant, is barred
6  from consideration.  In the absence of a specific United States
7  Supreme Court mandate for a particular resolution, the arbitrator
8  "will" divide the fees equally between the parties.[9]  (Def.'s
9  Motion, Ex. 2, Mediation & Binding Arbitration Policy ¶ 7.)

10      The above Policy provision is a model of how employers can
11  draft fee provisions to price almost any employee out of the
12  dispute resolution process.  At the hearing on August 29, 2011, the
13  court inquired of Ralphs as to the fees charged by the arbitrators
14  employed by Ralphs.  Ralphs estimated those fees to range from
15  $7,000 to $14,000 per day.  Plaintiff worked at a Ralphs service
16  deli for five months.  She claims she was not paid for rest and
17  meal breaks during which she worked.  Her monetary claims likely
18  total well under ten thousand dollars.  Assuming a two day
19  arbitration, Plaintiff would be required to pay somewhere between

20

21      [9] The court rejects Ralphs' assertion that a purported savings
22  clause in any way alleviates the economic fairness issues raised by
    the Policy's fee structure.  The Policy merely states that Ralphs
23  will pay a higher share of fees "where required by settled and
    controlling legal authority."  (Def.'s Motion, Ex. 2, Mediation &
24  Binding Arbitration Policy ¶ 10.)  First, a plaintiff's reasonable
    fear of incurring thousands of dollars in fees is unlikely to be
25  assuaged by the mere possibility that some unknown legal authority
    might allow the plaintiff to avoid those fees.  Second, the
26  question whether any such authority is sufficiently "settled and
    controlling" will often give rise to disputes over apportionment,
27  which, under the terms of the Policy, may then only be settled by
    the arbitrator with reference to a Supreme Court decision.  In the
28  absence of a Supreme Court decision precisely on point, the fees
    "will" be split fifty-fifty.

1   $7,000 and $14,000 in arbitrator's fees alone.  She also faces the
2   prospect of being required to pay those fees before she has any
3   opportunity to present her case.  Nor is there any guarantee that
4   Plaintiff will be able to resolve her claim in a matter of days.
5   As set forth in paragraph 8, the parties are permitted to conduct
6   discovery and bring motions.  Under these conditions, Ralphs, as
7   the economically stronger party, would have the ability and
8   incentive to file numerous pre-hearing and post-hearing motions
9   before the arbitrator, thus forcing a plaintiff to incur additional
10  fees that she could ill afford to pay.

11      By way of contrast, Plaintiff's filing fee in the present
12  action, filed in federal court, was $350.[10]  The fee to file a
13  complaint in California Superior Court is roughly the same.

14      The Policy's fee allocation structure creates a substantial
15  economic barrier to justice.  The terms of the Policy therefore
16  defeat the very purpose of arbitration as an alternative dispute
17  resolution system and method of preserving private and judicial
18  resources.  It is well settled that one of the fundamental purposes
19  of resorting to arbitration is to reduce the cost and delay of
20  litigation.  See Rodriquez de Quijas v. Shearson/American Exp.,
21  Inc., 490 U.S. 477, 479-80 (1989) (explaining that the Arbitration
22  Act strongly favors the enforcement of agreements to arbitrate as a
23  means of securing economical solution of controversies).  When, as
24  here, "the potential for individual gain is small, very few
25  plaintiffs, if any, will pursue individual arbitration," reducing
26  the aggregate liability an employer faces and effectively closing

27

28      [10] Plaintiffs who are unable to pay this filing fee may move
    to file in forma pauperis.  C.D. Cal. L.R. 5-2.

1  the arbitration doors.  <u>Shroyer</u>, 498 F.3d at 986; <u>see also</u> <u>Kaliroy</u>
2  <u>Produce Co., Inc. v. Pacific Tomato Growers, Inc.</u>, 730 F. Supp. 2d
3  1036, 1041 (D. Ariz. 2010) (internal citation omitted).

4  **IV.  Conclusion**

5      Our legal institutions depend on legitimate process and the
6  real possibility for redress.  Federal policy strongly encourages
7  arbitration that is "prompt, economical, and <u>adequate</u>."  <u>A.G.</u>
8  <u>Edwards & Sons, Inc. v. McCollough</u>, 967 F.2d 1401, 1404 n.2 (9th
9  Cir. 1992) (quotation marks omitted) (emphasis added).  The Ralphs
10  Policy is not economical or adequate.  Arbitration is intended to
11  be a fair and efficient means of resolving disputes, not a sham
12  having no "modicum of bilaterality."  <u>Ting</u>, 319 F.3d at 1149.
13  Ralphs' arbitration policy lacks any semblance of fairness and
14  eviscerates the right to seek civil redress, rendering it a right
15  that exists in name only.  To condone such a policy would be a
16  disservice to the legitimate practice of arbitration and a stain on
17  the credibility of our system of justice.

18      Because the Arbitration Policy is both procedurally and
19  substantively unconscionable, Defendant's Motion to Compel
20  Arbitration on an Individual Basis; and to Dismiss or Stay Action
21  is DENIED.[11]

22  IT IS SO ORDERED.

23  Dated: September 15, 2011

24                          DEAN D. PREGERSON
                            United States District Judge

25

26  _____

27      [11]  Because the court finds the Policy unconscionable, the
    court does not proceed to consider Plaintiff's alternative argument
28  under the National Labor Relations Act and <u>Gentry v. Superior</u>
    <u>Court</u>, 42 Cal. App. 4th 433, 463 (2007).